UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 1 2000

[signature]
CLERK

GLORIA J. GAGNON,

    Plaintiff,

v.                                                CIV NO. 99-653 DJS/WWD

RESOURCE TECHNOLOGY, INC.,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** comes before this Court following a two day bench trial held July 27 and 28, 2000. The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment. Following the close of evidence, the parties submitted post-hearing memoranda.

The instant action is a civil action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201-219. Plaintiff began working for Defendant in May, 1991. She was terminated in 1999. Plaintiff contends that Defendant violated the FLSA's mandatory overtime provisions as contained in 29 U.S.C. §207(a)(1) and that it terminated her in retaliation for asserting her rights under the FLSA in violation of 29 U.S.C. §215(a)(3). In addition, Plaintiff asserts that Defendant violated the overtime provisions of the New Mexico Minimum Wage Act, NMSA. 1978 §5-4-22(c) and breached its employment contract by terminating her. Plaintiff contends that Defendant's actions

were willful under the FLSA and the Portal to Portal Act, 29 U.S.C. §255(a). Defendant contends that Plaintiff was not entitled to overtime pay, as she was subject to an exemption to that requirement due to her management status with the company. Defendant further asserts that Plaintiff was terminated for her poor work performance and because she undermined the rest of the management team.

## FINDINGS OF FACT

1. The Court hereby adopts the Joint Proposed Findings of Fact and Conclusions of Law submitted by the parties on July 20, 2000 (Docket No. 43).

2. Plaintiff's duties with Defendant included answering phones and dealing with customers. In addition, she made deposits, kept track of accounts and handled the payroll. In addition, Plaintiff kept employee timesheets. Plaintiff also computed the payroll tax deposits and performed bookkeeping functions. Plaintiff sat in on some employee interviews. She also filled out employee verification forms. When she accepted the position with Defendant, it was with the understanding that she was not a skilled word-processor.

3. Plaintiff, Elvidio Diniz, who is Defendant's owner and president, the company's vice presidents, and the senior engineer attended "Senior Staff Meetings" which were held on a weekly basis.

4. There was conflicting testimony regarding Plaintiff's participation in the Senior Staff Meetings. Plaintiff testified that she merely presented information and took direction from the company's other officers. Mr. Diniz testified that decisions at the meetings were made on a consensus basis and that Plaintiff participated in the process. Mr. Charles Thompson, a senior staff engineer with Defendant for three years who also attended the meetings testified that Plaintiff had

significant input at them. Mr. Robert Oberdorfer testified that Plaintiff actively participated in the Senior Staff meetings and had a say in how the company was run. On this issue, the Court finds the testimony of Diniz, Thompson, and Oberdorfer more credible and more persuasive.

5. Plaintiff had authority to make purchases for the company and had control of a $5,000 account to be used for purchases. The account was characterized as an "emergency account" for necessary purchases when petty cash was not sufficient and the president of the company was unavailable to sign checks. Plaintiff and one other person, the receptionist/secretary, had signature cards for the account when it was initially opened. Plaintiff obtained a signature card for the receptionist/secretary, Lori Christian, on her own authority.

6. Plaintiff sat in on the interviews of several prospective employees, including those for a new accountant. In the case of hiring a new accountant, Plaintiff made a recommendation to Mr. Diniz, the president of the company. Also, Plaintiff requested and recommended the re-hire and a raise for Lori Christian as the receptionist/secretary. That recommendation was implemented following a senior staff meeting.

7. Plaintiff signed letters extending job offers and terminating employee health benefits for former employees. Plaintiff asserts that she wrote the letters at the express direction of other officers of the company. However, Mr. Diniz testified that he did not expressly approve all of the letters. The Court finds the testimony of Mr. Diniz more credible on this issue and concludes that Plaintiff exercised significant authority to terminate benefits for former employees, to solicit offers of insurance, and to deal with vendors supplying goods or services to the company.

8. A significant portion of Plaintiff's job duties were bookkeeping functions. Plaintiff was required to track accounts receivable and payable, employee time tracking, and kept track of

3

personnel matters and files. In addition, Plaintiff prepared the payroll and computed the company's payroll taxes. In addition, Plaintiff was responsible, as was the secretary/receptionist, for answering the telephones and some word processing. However, other employees would also answer Defendant's telephones, as necessary.

9. Elvidio Diniz and other officers of Defendant were considering Plaintiff's termination over a year prior to her firing. Approximately six months prior to Plaintiff's termination, her position was offered to Lori Christian, who declined the opportunity. In addition, Plaintiff's successor, Shirley Bailey, was approached regarding taking Plaintiff's position in October of 1998. Plaintiff testified that she knew that she was going to be fired over a year before her actual termination because Diniz was unhappy about an IRS audit in which she acted as the company's liaison with the IRS agent.

10. Plaintiff estimated that the majority of her time was occupied by her bookkeeping duties. When she complained of the hours required by her duties, Defendant requested that she provide a written description of the time required for each of her various responsibilities, but Plaintiff did not provide the document.

11. Plaintiff's salary began with Defendant at $22,000 per year. In May, 1996, Plaintiff's salary was $33,560 per year. At the time of her termination, Plaintiff's salary was $38,000 per year.

### CONCLUSIONS OF LAW

12. Plaintiff was not terminated in retaliation for asserting the employment rights of herself or of other employees. The evidence established that officers of Defendant were investigating a replacement for Plaintiff and considering terminating her over a year before the actual event. Plaintiff's termination was based upon her job performance and personality conflicts within the company rather than an improper retaliatory motive. Consequently, judgment in favor of Defendant

4

employees may be terminated with or without cause. Consequently, Plaintiff's termination did not constitute a breach of employment contract. Defendant is entitled to judgment in its favor dismissing Count VI of the Complaint.

18. All counts of the complaint being subject to judgment in Defendant's favor and dismissal, Plaintiff is to take nothing.

**IT IS SO ORDERED.**

---

DON J. SVET
UNITED STATES MAGISTRATE JUDGE